UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

EL LEGADO DE CHI CHI RODRIGUEZ
GOLF RESORT (S.C.) S.E.

BANKR. NO. 08-8321 (BKT)

Chapter 11

## COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO JOINT DISCLOSURE STATEMENT AND REORGANIZATION PLAN

TO THE HONORABLE COURT:

COMES NOW the Official Committee of Unsecured Creditors of the above-described Debtor ("Committee"), and through its undersigned attorney very respectfully submits this objection to the Disclosure Statement of Debtor and Juan A. Rodriguez Vila. In support thereof, the Committee respectfully represents as follows:

### I. INTRODUCTION

The Disclosure Statement cannot and must not be approved because its solicitation would result in a waste of time, effort, and money to the detriment of the Debtor, their creditors, and the Honorable Court. Applicable case law and common sense dictate that, in order to maintain judicial efficiency and avoid the unnecessary waste of estate assets, a disclosure statement may not be approved if the plan to which it relates is unconfirmable on its face. This Court must protect estate assets from needless waste by rejecting the Disclosure Statement and preventing the expensive and time-consuming process of soliciting a futile Plan. Not only is the Plan deeply and fatally flawed, the Disclosure Statement itself fails to serve the very purpose for which it was intended – providing creditors with adequate information to permit them to make an informed judgment regarding the merits of the Plan. Thus, the Disclosure Statement must be rejected pursuant to Section 1125(b) of the Bankruptcy Code, which prohibits approval of a disclosure statement that lacks such information.

In addition to these defects in the Plan, the Disclosure Statement itself fails to satisfy statutory

requirements. The Disclosure Statement fails to include adequate information relating to, among other things, the valuation of the Debtor's assets that form the very basis of the Plan, coupled with the lack of a professional appraisal and the impact of the pending litigation and adversary proceedings on recoveries under the Plan. Without this information, the Disclosure Statement falls woefully short of providing creditors with the adequate information needed to render an informed decision on the Plan as required by the Bankruptcy Code, and creditors will be unable to cast a meaningful vote on the Plan. Therefore, the Honorable court should reject the Disclosure Statement until such time as the proponents cure these notable deficiencies in the Plan and the Disclosure Statement.

## II. ARGUMENT

In a nutshell, as addressed to unsecured creditors the Reorganization Plan (the "Plan") provides a 1.30% recovery for holders of allowed general unsecured claims and 0% recovery for holders of general unsecured contingent and disputed claims. It is evident that the Disclosure Statement filed by the Proponents reveals that it disregards the unsecured creditors' rights and interests, which at this procedural stage configures a *prima facie* case of bad faith that warrants the denial of the Disclosure Statement. The Proponents are admittedly merely "providing consideration sufficient to pay allowed administrative expenses and allowed priority claims in full, and...restructure certain **secured** claims in order to provide lender adequate protection for its payment", without more. *See* Disclosure Statement, Dkt. 313, at p. 28. We note that "the bankruptcy judge is in the best position to assess the good faith of the parties' proposals." *In re Madison Hotel Associates*, 749 F.2d 410, 425 (7th Cir. 1984). However, the Court, being a court of equity, should not find good faith where the petition was not filed with the honest intention of effecting the reorganization plan, and for the purpose of hindering and delaying creditors. *See In re Agregados de Manati, Inc.,* 357 F.Supp. 1263 (D.C. P.R. 1973).

The Disclosure Statement fails to provide creditors with adequate information as required by 11 U.S.C. § 1125. The Disclosure Statement leaves many important questions unanswered. Moreover, the accuracy and reliability of many of the statements contained in the Disclosure Statement are highly

questionable. The Proponents fail to provide adequate information with regard to a number of different areas that are central to any meaningful evaluation of the Plan.

A. Value of Assets

Courts have held that disclosure statements should include, *inter alia*, a complete description of the available assets and their value, and a description of the valuation methods used to produce the financial information in the disclosure statement. *In re Reilly*, 71 B.R. 132 (Bankr. D. Mont. 1987) (denying approval of disclosure statement where it failed to contain factual support of the opinions contained therein, including an adequate factual basis on valuation); *In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 171 (Bankr. S.D. Ohio 1988) (noting that adequate information must include the disclosure of "any financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan"); *In re Ligon*, 50 B.R. 127, 130 (Bankr. M.D. Tenn. 1985) (a description of available assets and their value is vital element of necessary disclosure); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988) (stating that the court was "reluctant to approve a disclosure statement premised on an unsupported and self-serving valuation...before even considering whether the Plan complies on its face with Code § 1129(a)") (internal citations omitted).

Although as of the filing of the involuntary petition "Debtor listed such real property as having an approximate aggregate value...of $65 million", *see* Dkt. 313 at p. 23, the proponents self-servingly state that that as of April 20, 2010 the real property, golf course, buildings and improvements "have an approximate market value of $13 million" as per Exhibit E to the Disclosure Statement, which clearly states that the valuation "was not prepared by a certified appraiser and was prepared solely for El Legado's Reorganization Plan." This failure alone is sufficient to require disapproval of the Disclosure Statement. The question as to the proper value of the Debtor's business is primarily a confirmation issue that can be dealt with only through complex valuation proceedings and the Committee does not propose that this Honorable Court resolve them now. Because this issue clearly stands in the way of

Plan confirmation, however, solicitation of a plan that fails to address the accurate valuation of assets through professional appraisals would be futile and an unnecessary waste of estate assets.

B. Liquidation Analysis

The liquidation analysis attached as Exhibit L to the Disclosure Statement is defective. The liquidation analysis appears not to attribute any value to El Legado's business, specially in view of the fact that the Disclosure Statement indicates that el Legado "has many features that favor a successful reorganization and long-term operational viability....Moreover, as is detailed in the financial projections...Consulting has already identified subsidies, incentives, and tax credits that the Resort is eligible to receive through the Workforce Investment Act (WIA) as well as from the Puerto Rico Tourism Company (PRTC), and the local tax collecting agency, or 'Hacienda'." Dkt. 313 at 47. Moreover, "the fact remains that the most critical and capital intensive components (i.e. the basic infrastructure) of a first-class golf resort have already been constructed." Dkt. 313 at p. 48.

It follows that according to the proponents themselves, El Legado has a potentially extremely profitable business. In a chapter 7 liquidation, the trustee would surely attempt to sell El Legados' business as a going concern in order to maximize value. However, it appears that the Debtors' liquidation analysis has not attributed any value whatsoever to El Legado's business. There does not appear to be any consideration of Mr. Rodriguez's world recognized good will or other value of El Legado's business. Does the proponents have professional appraisals? Does the proponents have any audited financial statements? Does the proponents believe that its business has any goodwill or going concern value? All of these important questions remain unanswered.

C. Seven-Year Payout

The Plan requires certain creditors to wait seven years to be paid. What is the petitioners' basis and reasoning for depriving creditors of the use of funds for such an extremely long period of time? Why is the delay necessary? What does it accomplish? How is it fair? Who does it benefit? What limitations, if any, are imposed on the Debtors' operations during this 7-year period? Among other

things, an adequate disclosure statement would have to answer all of these questions.

D.  Impact of Pending Litigation and Adversary Proceedings on Projected Distributions

The Disclosure Statement also fails to provide adequate information regarding the impact of pending litigation and adversary proceedings, which potentially will include, by information and/or belief, an imminent cause of action to be filed by the corporate partners within the context of this case. The Disclosure Statement describes the pending litigation in detail, but fails to disclose that if the pending litigation and the adversary proceeding (which includes a counterclaim) is resolved in favor of creditors, certain unsecured creditors will be entitled to a much greater recovery than the one currently provided for in the Plan.  The Disclosure Statement further fails to include any analysis regarding projected recoveries in light of such an outcome.  The pending actions are more than a mere possibility – they are pending actions which could likely have a dramatic impact on projected recoveries.  As a result, analysis regarding the pending litigation and adversary proceedings is necessary for creditors to make an informed judgment regarding the Plan.  Without such information, the Disclosure Statement is incomplete, and should not be approved.

The Proponents have proposed a defective plan. Therefore, the Disclosure Statement is moot and need not even be considered. *See In re Filcas of America, Inc.*, 147 B.R.. 297 , 299 (Bankr. D.N.H. 1992). Even if the Plan was not unconfirmable on its face, the Disclosure Statement could not be approved. The Disclosure Statement is inadequate.

WHEREFORE, the Committee respectfully requests that the Court not approve the Joint Disclosure Statement and that the Court order that the Debtors' rights of exclusivity have terminated.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 24th day of June, 2010.

I hereby certify that a copy of this motion was filed using the CM/ECF System, which will send notification of said filing to the attorneys of record, and to the U.S. Trustee.

S/ Javier López-Pérez
USDC-PR 221212
P.O. Box 9020459
San Juan, Puerto Rico 00902-0459
Tel 787-769-8100 x. 253 / Fax (787) 750-7444
lopezperezlaw@gmail.com